Lucille HOWARD, Appellant,

v.

William L. WILBURN, Appellee.

No. 13828.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 1, 1961.

Rehearing Denied Nov. 29, 1961.

Charles R. Cunningham, Ward & Brown, Corpus Christi, for appellant.

Keys, Russell, Keys & Watson, M. W. Meredith, Jr., Corpus Christi, for appellee.

BARROW, Justice.

This is a suit for damages arising out of the death of John Hallie Howard, appellant's husband, a pedestrian, who was struck by an automobile driven by appellee on November 23, 1959, and died as a result thereof on November 24, 1959. The case was tried to a jury, and upon the jury's verdict upon special issues judgment was rendered for the appellee.

The jury made the following findings: Issue No. 1, that appellee did not fail to keep a proper lookout. Issue No. 3, that appellee was not operating his automobile at a negligent rate of speed under the circumstances. Issue No. 5, that appellee's automobile was not traveling at a speed greater than thirty miles per hour. Issue No. 7, that the accident was not an unavoidable accident. Issue No. 8, that the deceased, John Hallie Howard, was not at the time of the accident intoxicated. Issue No. 11, that the deceased failed to keep a proper lookout immediately before and at the time of the accident. Issue No. 12, that such failure was a proximate cause of the accident. Issue No. 13, that immediately before and at the time of the accident the deceased, John Hallie Howard, was crossing Port Avenue at a point other than within a marked or unmarked crosswalk at an intersection. Issue No. 14, that such crossing was a proximate cause of the accident. The jury failed to answer the damage issue and no complaint is urged thereto.

The accident occurred about 6:45 in the evening at the intersection of Port Avenue and Nueces Street in the City of Corpus Christi. It was already dark or getting dark, except for artificial lighting. Appellee was driving from north to south on Port Avenue, a main thoroughfare in the City of Corpus Christi. The deceased was walking from east to west on Nueces, a narrow street, having only eighteen feet of paving in the center, with a ten foot strip on each side grown up with grass and weeds, except for trails where pedestrians walked. There were no paved sidewalks on either side of Nueces Street, but on the south side, immediately west of Port Avenue, there were some paving blocks between the curb and the houses. The four corners at the intersection were curbed with a rounded curb, having a radius of eight feet. There were stop signs on each side of Port Avenue, facing Nueces Street. The deceased in attempting to walk from the southeast corner of the intersection across Port Avenue, was struck by appellee's automobile. The point of impact was located on Port Avenue, some three to five steps east of the west side of Port Avenue and sixteen feet south of the southwest corner of the intersection. There were six possible eye witnesses to the accident: Mrs. Bernice Kennison and Mrs. Evelyn Dennis, who were sitting in a car on Nueces Street on the east side of Port Avenue, facing west at the stop sign at the intersection; Fletus Johnson, who was standing on the south side of said car, in the street, talking to Mrs. Dennis; Ary Latchie, who was standing to the rear of Johnson; the appellee, and William Manak, who was riding in the car with Wilburn. Neither Johnson nor Mrs. Dennis testified. The record shows that Johnson died prior to the trial.

By her first point, appellant contends that the evidence conclusively shows that appellee was not keeping a proper lookout, or, in the alternative, that the jury's finding that he did not fail to keep a proper lookout is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. By her second point, ap-

pellant contends that there is no evidence in the record to support the jury's finding that the deceased failed to keep a proper lookout, or, in the alternative, that the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. We shall consider those two points jointly.

■ We have reviewed the evidence and find that these findings are supported by evidence which we shall hereinafter discuss. A consideration of appellant's alternative contentions requires us to examine the entire record and to weigh the evidence. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660.

■ On the whole, appellant based her case on the testimony of the witnesses Latchie and Mrs. Kennison. Mrs. Kennison testified that she saw appellee's car some two blocks away, when deceased had almost completed crossing the street; that deceased, before crossing, stopped and looked both to his right and left. She testified that deceased went straight across the street, and then continued: "I mean he wasn't exactly where he was supposed to be, that's what I was saying, I mean, he was kinda over because there were two in the car, * * *." She and Mrs. Dennis, however, did show officer Thompson, the officer who investigated the accident, just where deceased was hit.

Latchie testified that he approached the scene walking down the south side of Nueces Street; that near the middle of the block, east of the intersection of Port Avenue and Nueces Street, he overtook deceased and walked part of the balance of the way with him, but before reaching Port Avenue he saw Johnson talking to the ladies, and "I wanted to talk to him", so he went on ahead of deceased and turned out into Nueces Street, where the Dennis car in which the ladies were sitting was stopped. He testified that he did not see deceased again until he reached the center line on Port Avenue; that he saw appel-lee's car approaching, and fixed the distance at about a block away. He drew a straight line on the map, from the southeast corner across Port Avenue to the southwest corner, and said that was the way deceased had traveled.

Appellee testified that he had his car lights on and was watching ahead, but just immediately before the accident he glanced toward his companion in the car. At that moment Manak yelled "look out", appellee saw an image, and then the accident happened. He had not seen deceased before that moment. His lights were on dim, and that caused them to shine slightly to the right.

Manak testified that prior to the accident appellee was driving his car in a normal manner, at about thirty miles per hour, and was watching where he was going. Manak did not realize that there would be an accident until just immediately before it happened. He then hollered, and instantly the brakes were on. Appellee must have seen the man about the same time he did. Before the impact he was able to distinguish that the object was a man, who seemed to be walking to their right, and "just at the moment of the impact he seemed to turn his head towards us as though he just realized something was there."

Appellee further testified that Mrs. Kennison at the scene told him, in the presence of Manak, "you weren't going very fast, he just walked out in front of you." Manak testified, "I believe the young man (obviously meaning Latchie) said that Billy wasn't going very fast. It looked like the man just walked out in front of the car, and I believe that the lady agreed with him." Mrs. Kennison denied making the statement, but Latchie did not.

Officer Thompson, an experienced investigator of the police department, testified that he arrived shortly after the accident and made an investigation; that he talked to the witnesses and took their statements; that he examined the physical facts on the

ground, such as the skid marks and other physical evidence; that he made measurements and recorded all these matters in notes which he kept. He testified that two eye witnesses showed him the exact spot of the impact, one of whom was Mrs. Kennison. She confirmed that she did so, by showing Officer Thompson where deceased was walking and where he got hit. Officer Thompson testified that the point of impact was sixteen feet south of Nueces Street.

J. B. Freeman, a witness for appellee, testified that he was a merchant patrolman or night watchman who checked thirty-four places of business each night, including the C. P. & L. warehouse located on the north side of Nueces Street, just east of Port Avenue; that just prior to the accident he was driving north on Port Avenue, intending to turn east on Nueces Street in order to check the C. P. & L. warehouse; that he had to make a complete stop, because two cars were side by side, facing west, on Nueces, blocking the street. The car on its own right side of the street had some colored folks in and around it, talking. The car on the left was going around the other and was waiting for traffic to clear, when the car moved on he turned right, or east on Nueces Street. His car was in low gear and he was just barely moving. He had his headlights on, and as soon as he rounded the corner he saw a colored man about twenty feet away staggering up the street. He saw that the man was going to walk right into his car, so he came to a complete stop. The man put his hand on the bumper of his car, then backed up and went around the car to Freeman's left. Freeman then pulled across Nueces Street, stopped, and immediately heard the impact of an accident. He looked around and saw that someone had been hit on Port Avenue. He later saw that it was the same man who staggered into his car. He testified that from the man's walk and other actions, the man was either drunk or sick. Appellant testified that deceased had had nothing to drink

all day, but had been staying home, feeling bad, for six days. In that connection, Mrs. Kennison and Latchie testified that they saw no other traffic except appellee's car.

Mr. James C. Flanagan, a mechanical engineer and witness for appellant, prepared a plat of the intersection. His plat indicated a street light at the northeast corner. He took light meter readings. His light meter readings indicated stronger light at the northeast corner than at the southeast corner. He took no reading at the point of the impact, some sixteen feet south of the southwest corner. Mrs. Kennison testified that she did not have any trouble seeing deceased. She was in the Dennis car facing west with the lights shining directly west into the intersection. Latchie testified as to the street light. It was dark, but on the intersection it was light from the cars, the street light and the C. P. & L. light. Appellee testified that the street light at the intersection put out more light across Port Avenue than from side to side; that the lighting conditions in the southeast corner were poor, and that it was pretty dark ten or fifteen feet south of the intersection, all across Port Avenue. All of the evidence showed that the deceased was a small colored man and that he was wearing dark clothing.

Under the circumstances, we think the jury might logically and reasonably reach the conclusion that when appellee was approaching the point of the collision he had to pass through a brightly lighted area, with the lights shining directly across his line of travel, and then enter immediately into a darker area, and that it would be difficult for him to see this small dark object until deceased walked directly in front of the car and into the beam of the car light, even though keeping a proper lookout. These facts are entirely consistent with appellee's failure to see the deceased until too late to avoid hitting him. On the other hand, the evidence as a whole shows that deceased could have seen appellee's car, with its lights burning, when it was as

much as from one to two blocks away, and, if he had looked, could have observed it as it approached on its own right side of the street at a normal and careful rate of speed. There is no evidence that deceased hesitated, as though to let the car pass in front of him, or increased his speed in an attempt to dodge the approaching car—he "just walked out in front of the car." From these facts it might reasonably be inferred that deceased failed to keep a proper lookout.

Having considered the entire record, we are of the opinion that the findings of the jury are not so contrary or against the overwhelming preponderance of the evidence as to be manifestly wrong or unjust.

■ By points three to twelve, inclusive, appellant complains of the action of the trial court in submitting Special Issues Nos. 13 and 14, and the instructions in connection therewith, on various grounds. We are of the opinion that the court did not err in submitting the issues. Moreover, even if there was any error in the manner of such submission, under the findings of the jury it was harmless.

■■ In connection with Special Issue No. 13, the court submitted a correct definition of a marked or unmarked crosswalk. In connection with Special Issue No. 14, the court instructed the jury in the exact language as Section 78(a), of Article 6701d, Vernon's Tex.Civ.Stats., that "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the highway." Appellant contends that there was no marked crosswalk at the intersection, and that there is no evidence to raise the issue of the existence of an unmarked crosswalk. The evidence shows that an area on the south side of Nueces Street, outside the edge of the traversable or paved portion thereof, although grown with turf, was used by pedestrians, and if the lines on each side of this area were extended across Port Avenue, they would in law constitute an unmarked crosswalk. See, Brabson v. City of San Antonio, Tex.Civ.App., 332 S.W.2d 387. Moreover, if appellant is correct in contending that there was neither a marked nor unmarked crosswalk at the place where deceased attempted to cross Port Avenue, then, as a matter of law, it was his duty to yield the right-of-way to appellee's vehicle. Appellant contends that the court erred in failing to submit an issue inquiring if deceased failed to yield the right-of-way. We overrule the point. The court evidently held, from the undisputed evidence, that the deceased did so fail. In this the trial court was correct. We need not repeat the evidence, but it is not shown by any evidence that the deceased made any effort to yield the right-of-way. Appellant contends that an issue of negligence should have been submitted. We overrule that contention. If deceased was attempting to cross outside a crossway, marked or unmarked, and failed to yield the right-of-way, he was guilty of negligence per se. Finally, appellant contends that the instruction given in connection with Issue No. 14 is a general charge, and does not come within the purview of the Rules of Civil Procedure. Even if that be true, we think it was harmless, for the reason that it was a correct statement of the law. Issue No. 14 was submitted conditionally upon an affirmative answer to Issue No. 13, in which event the instructions correctly prescribed the duty of the deceased. Finally, we are of the opinion that if there were any error in the submission of Special Issues Nos. 13 and 14, such error could not have caused the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. Neither could the giving of such issues in any way influence the jury to have answered the other issues in the way they did. Under the other findings of the jury, appellee was clearly entitled to judgment. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806.

The judgment is affirmed.